UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL D. PARAYNO, <br><br> Defendant. | Case No. 11-cv-05424-JST <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Re: ECF No. 34 |

In this action for violations of the Federal Communications Act and related claims, Plaintiff J&J Sports moves for summary judgment. Defendant Parayno has not filed an opposition or a statement of non-opposition as required by Civil Local Rule 7-3. For the reasons set forth below, the motion is GRANTED.

I.   BACKGROUND

　　A.   The Parties and Claims

This action arises out of Defendant Parayno's unauthorized exhibition of a boxing match titled *Tactical Warfare: Manny Pacquiano v. Antonio Margarito, WBC Light Middleweight Championship Fight Program* ("the Program"), at the Berkeley Birdland Jazz ("the establishment") on November 13, 2010. Compl. ¶¶ 7, 9, 12, ECF No. 1.

　　J&J Sports brings four claims against Parayno arising out of the alleged interception and exhibition of the Program: (1) violations of 47 U.S.C. § 605; (2) violations of 47 U.S.C. § 553; (3) conversion under California law; and (4) violations of California's Business and Professions Code Section 17200.

　　B.   Undisputed Facts

J&J Sports owns the exclusive nationwide rights to distribute the Program to commercial entities. Gagliardi Decl. ¶¶ 1-3, ECF No. 34, Ex. 3. J&J Sports sells licenses to commercial

entities in California, which permit the entities to exhibit the Program in their commercial establishments. Id.

On November 13, 2010, investigator Mark C. Gerstle observed the unlawful exhibition of the Program at the Berkeley Birdland Jazz between 7:30 p.m. and 7:58 p.m. Gerstle paid a cover charge of $20 to enter the establishment. The Program was displayed on both a large projection screen and a smaller 25" television to approximately 25 to 39 patrons. The establishment can accommodate a total of 50 patrons. Gerstle Decl. at 1-2, ECF No. 34-2.

Parayno, an owner and manager of the Birdland Jazz, willfully intercepted and broadcast the Program at the establishment for his financial gain without paying a licensing fee to J&J Sports. Request for Admission ("RFA") at 1-3, Riley Decl., Ex. A, ECF No. 34-1.[1] Parayno advertised that the event would be shown at the establishment. Id. at 3. He received the Program via satellite. Id. at 5.

### C. Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-

---

[1] J&J Sports served requests for admission on Parayno on December 13, 2012, but Parayno never responded to the requests. Riley Decl. ¶¶ 3-4. Accordingly, the matters in the requests are deemed admitted. See Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."); see also Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007) ("Unanswered requests for admissions may be relied on as the basis for granting summary judgment.").

1  49 (1986). A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." Id. "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**III.  DISCUSSION**

J&J Sports moves for summary judgment on its claim under 47 U.S.C. § 605 and its claim for conversion under California law. Parayno has not filed an opposition or a statement of non-opposition as required by Civil Local Rule 7-3. While the Court may not grant J&J Sports' motion on the basis that it is unopposed, the Court may grant the motion if J&J Sports' submissions are sufficient to support the motion and do not reveal a genuine issue of material fact. See Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993).

//

**A.     Title 47 U.S.C. § 605**

    **1.     Liability**

The Federal Communications Act prohibits the unauthorized publication or use of radio communications. Cal. Satellite Sys. v. Seimon, 767 F.2d 1364, 1366 (9th Cir. 1985). Protected radio communications include satellite broadcasts. See DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008) (holding that it "is clear from the case law since the 1984 amendments that the 'communications' protected by § 605(a) include satellite television signals") (citations omitted).

Section 605 of the Act provides in part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

An aggrieved person may bring a civil action under Section 605 in district court and may elect to recover either statutory or actual damages. See 47 U.S.C. § 605(e)(3). An aggrieved person "shall include any person with proprietary rights in the intercepted communication by wire or radio[.]" 47 U.S.C. § 605(d)(6).

Liability under 47 U.S.C. § 605 requires proof that defendant has "(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication by the plaintiff." Cal. Satellite, 767 F.2d at 1366 (citation omitted).

Here, the undisputed facts show that J&J Sports owns the exclusive rights to distribute the Program and that Parayno willfully intercepted the Program via satellite without first paying a license to J&J Sports. Gagliardi Decl. ¶ 3; RFA at 1-5, Riley Decl., Ex. A. The undisputed facts also show that Parayno exhibited the Program to patrons of the establishment. RFA at 1-5, Riley Decl., Ex. A. These undisputed facts are sufficient to entitle J&J Sports to summary judgment on its claim under Section 605. Accordingly, J&J Sports' motion for summary judgment on its Section 605 claim is GRANTED.

/ / /

### 2. Damages

#### a. Statutory Damages

An aggrieved party may seek to recover either actual or statutory damages under Section 605. 47 U.S.C. § 605(e)(3)(C). Here, J&J Sports requests $10,000 in statutory damages, the maximum award possible, on the basis that it would be "impossible" to calculate actual damages.[2] Mot. at 11, ECF No. 34.

An aggrieved party may recover not less than $1,000 and not more than $10,000, "as the court considers just," for each violation of Section 605(a). 47 U.S.C. § 605(e)(3)(C)(i)(II). The Ninth Circuit has not provided guidance to district courts as to how to calculate statutory damages under Section 605. Courts in this district, however, routinely take into account several factors when calculating statutory damages under Section 605, such the establishment's maximum capacity, the number of patrons present during the exhibition of the program, the number of televisions on which the program was exhibited, whether the defendant is a repeat offender,[3] and evidence of financial gain. When the program is shown to a small audience and there is no evidence of promotional activity, courts in this district typically award minimal statutory damages. See, e.g., Kingvision Pay-Per-View, Ltd. v Backman, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000) (awarding $1,000 in statutory damages where there were sixteen patrons in a bar and no cover charge was imposed and there was no evidence of other promotional activity).

---

[2] At a hearing in another case – J&J Sports has a lot of cases – counsel for J&J Sports confirmed that it seeks the maximum award of damages in every case. It is hard to imagine a less persuasive strategy. Congress presumably established the maximum award to provide redress for the very worst violations of the statute, and by definition not *every* defendant in J&J Sports' cases can be the worst violator – even with respect to each other, much less all other violator in the federal courts.

[3] J&J Sports submitted evidence showing that Parayno is a repeat offender, but the cases cited by J&J Sports were all filed after this one. See Mot. at 16; see also J&J Sports Productions, Inc. v. Parayno, Case No. 3:12-cv-02223 SI (judgment entered against Parayno in the amount of $5,200); J&J Sports Productions, Inc. v. Parayno, Case No. 3:12-cv-4790 TEH (judgment entered against Parayno in the amount of $4,200); J&J Sports Productions, Inc. v. Parayno, Case No. 4:12-cv-01704 PJH (judgment entered against Parayno in the amount of $5,200). For this reason, Court does not take into account the judgments entered in those cases. J&J Sports was free, of course, to cite Parayno's conduct in this case as prior conduct when it argued for relief in those subsequent cases.

Here, the undisputed facts show that the maximum capacity of the establishment was 50 patrons; that between 24 and 39 patrons were at the establishment at the time of the exhibition at issue; that the Program was shown on both a projector and a 25" television; that patrons paid a $20 cover charge to enter the establishment; that Parayno advertised the Program prior to exhibiting it, and that the license fee paid to J&J Sports by establishments to lawfully broadcast the program was $2,200.  Gerstle Decl. at 1-2, ECF No. 34-2; RFA at 1-5, Riley Decl., Ex. A, ECF No. 34-1; Gagliardi Decl., Exh. 2, ECF No. 34-3.

In light of this evidence, the Court concludes that an award of $2,200 in statutory damages is appropriate.

### b.     Enhanced Damages

Section 605 gives discretion to a district court to award up to $100,000 in enhanced damages to an aggrieved party where "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain[.]"  47 U.S.C. § 605(e)(3)(C)(ii).

Here, J&J Sports requests $100,000 in enhanced damages, the maximum award possible,[4] on the basis that a modest award of damages would not satisfy the purpose of the Federal Communications Act, which is to deter piracy.  This argument would apply to *any* violation of the statute, gives the Court no guidance as to how to exercise its discretion, and is not deserving of serious consideration.  Focusing on the specific facts of this case, imposition of the maximum penalty seems particularly inappropriate, given that courts in this district typically award enhanced damages of $5,000 or less where the number of patrons present was modest and the patrons paid a cover charge.  See, e.g, Garden City Boxing Club, Inc. v. Lan Thu Tran, Case No. 05-cv-05017 RMW, 2006 WL 2691431, at *2 (N.D. Cal. Sept. 20, 2006) (awarding $1,000 in statutory damages and $5,000 in enhancement damages when 40 persons were present at the establishment and patrons were charged a $10 cover charge); Entertainment by J&J, Inc. v. Montecinos, Case No. 01-cv-4242, 2002 WL 1735384, at *1 (N.D. Cal. July 25, 2002) (awarding $1,000 in statutory

---

[4] See footnote 2, *supra*.

damages and $5,000 in enhancement damages when 35 persons were present at the establishment and patrons were charged a $10 cover charge).

The Court concludes that an award of $2,200 in enhanced damages is appropriate in light of the previously-described facts.

### B. Conversion

#### 1. Liability

"In California, conversion has three elements: ownership or right to possession of property, wrongful disposition of the property right and damages." G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir. 1992) (citation omitted). Although conversion typically involves tangible property, courts in this district routinely apply the law of conversion to the wrongful disposition of intangible property such as the Program at issue in this case. See, e.g., J&J Sports Prods. v. Coyne, 857 F. Supp. 2d 909, 918 (N.D. Cal. 2012) (granting summary judgment on conversion claim against a defendant who intercepted and exhibited a televised boxing match without paying a licensing fee).

Here, the undisputed facts show that J&J Sports owned the exclusive commercial distribution rights to the Program and that Parayno's unauthorized interception of the Program wrongfully disposed J&J Sports of its right to distribute the Program and caused J&J Sports to lose the profit it would have made from licensing the Program. Gagliardi Decl. ¶¶ 1-5; RFA at 1-5, Riley Decl., Ex. A. Because these undisputed facts are sufficient to entitle J&J Sports to a directed verdict at trial, J&J Sports' motion for summary judgment on its conversion claim is GRANTED.

#### 2. Damages

A plaintiff asserting a claim for conversion may recover either the value of the property at the time of the conversion or an amount sufficient to indemnify the plaintiff for losses that were proximately caused by the conversion. See Cal. Civ. Code § 3336; see also Coyne, 857 F. Supp. 2d at 919 ("Damages for conversion are based on the value of the property at the time of the conversion") (citation omitted).

Here, J&J Sports has submitted evidence showing that the cost of a license to exhibit the Program at the establishment would have been $2,200. Gagliardi Decl. ¶ 8. The Court concludes that the award of $2,200 in statutory damages, *supra*, makes J&J Sports whole for the injury suffered by Parayno's conversion, and that the award of separate damages for conversion would lead to duplicative recovery.

### C. Attorney's Fees

Section provides that a district court "shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

J&J Sports moves for leave to file a motion for attorney's fees within fourteen days of the date on which the Court enters judgment. Given that the Court has granted summary judgment to J&J Sports on its Section 605 claim, and that an award of attorney's fees to a prevailing party under Section 506 is mandatory, J&J Sports' request is GRANTED.

## IV. CONCLUSION

J&J Sports' motion for summary judgment is GRANTED with respect to its claim under 47 U.S.C. § 605 and its conversion claim under California law. The Court awards J&J Sports $2,200 in statutory damages and $2,200 in enhanced damages under Section 605, for a total of $4,400. J&J Sports shall file a proposed judgment within three days of the date this order is filed. J&J Sports may file a motion for attorney's fees within fourteen days of the date judgment is entered.

**IT IS SO ORDERED**.

Dated: October 28, 2013

_____
JON S. TIGAR
United States District Judge